***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris, with modifications.
 *********** ISSUE
To what further compensation, if any, is Plaintiff entitled?
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission.
2. An employer-employee relationship existed between the parties on January 21, 2008.
3. There is no question as to misjoinder or nonjoinder of any parties, and the Industrial Commission has jurisdiction over this claim.
4. Defendant-Employer is self-insured.
5. Plaintiff's average weekly wage in this claim is $502.47, with a compensation rate of $335.00.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission forms and filings
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Social Security disability determination
 • Exhibit 5: Claim payment log
Transcripts of the depositions of the following were also received post-hearing:
 • Dr. Leslie J. Cargile
 • Dr. Stephen M. David (with Plaintiff's Exhibit 1)
 • Dr. Daniel W. Hankley (with Defendant's Exhibit 1)
 • Dr. Richard S. Broadhurst (with Defendant's Exhibits 1 2)
 • Terence Fitzgerald, Ph.D. (with Defendant's Exhibit 1 and Plaintiff's Exhibits 1 2) *Page 3 
 • Charlie A. Edwards (with Plaintiff's Exhibit 1)
 • Jack H. Dainty (with Defendant's Exhibits 1 2)
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 55 years old, with a date of birth of April 12, 1956. Plaintiff completed the sixth grade, but received no further formal education.
2. Plaintiff began working for Defendant's predecessor in a food warehouse in Swannanoa, North Carolina in 1987. After Defendant bought the predecessor, Plaintiff continued working in the same warehouse.
3. Plaintiff worked for Defendant as a hauler. His job was to fill orders for stores by picking up boxes of product and loading them onto a battery-operated pallet jack, then hauling the freight to the outgoing loading dock. Plaintiff, on his own, had to be able to lift boxes of product weighing up to approximately 70 pounds.
4. Prior to the date of injury in this claim, Plaintiff had low back problems. He had periods of waxing and waning low back pain since approximately 1989 and had been diagnosed by his primary care provider, Dr. Brian MacDowell, with lumbar degenerative disc disease and arthritis.
5. Prior to the date of injury in this claim, Plaintiff had not missed any significant work time because of his low back problems and performed his job well and at full duty for Defendant. *Page 4 
6. After sustaining the injury in this claim, Plaintiff was consistently forthcoming in volunteering information to his medical providers about his history of low back problems that pre-dated the date of injury in this claim.
7. On January 10, 2008, Plaintiff went to see Dr. MacDowell for flu-like symptoms. Dr. MacDowell wrote Plaintiff out of work through January 13, 2008, for the flu-like symptoms and also assigned a 10-pound lifting restriction for Plaintiff because of his low back condition.
8. On January 21, 2008, while lifting boxes that weighed 50 to 70 pounds at work with Defendant, Plaintiff had an onset of severe low back pain.
9. Plaintiff finished his shift, but by the afternoon, his low back pain had increased. By the time Plaintiff got home, he could barely climb out of his truck and walk up the steps to his home.
10. Defendant accepted Plaintiff's January 21, 2008 back injury as compensable by filing of an Industrial Commission Form 60, Employer's Admission of Employee's Right toCompensation, dated August 4, 2008.
11. Defendant sent Plaintiff to Sisters of Mercy Urgent Care for treatment of his back injury. Plaintiff presented there on January 22, 2008, and complained of burning pain in his left leg, low back pain, and tenderness in his sacral area. Plaintiff was written out of work.
12. Defendant then directed Plaintiff to the practice of Dr. Leslie Cargile, a family physician, for further treatment. Dr. Cargile's assistant recommended that Plaintiff be evaluated by an orthopedic surgeon.
13. Defendant did not send Plaintiff to an orthopedic surgeon. Instead, Plaintiff returned to Dr. MacDowell, his primary care provider.
14. On February 29, 2008, Plaintiff saw Dr. MacDowell with continuing low back pain. Dr. MacDowell recommended a lumbar MRI. *Page 5 
15. On March 5, 2008, Plaintiff underwent a lumbar MRI. The radiologist compared the March 5, 2008 MRI to a lumbar MRI Plaintiff had undergone in 2004. The new MRI was read to show severe central and lateral recess spinal stenosis at L4-5, central and left central extrusion of the L5-S1 disc impinging on the left side of the thecal sac and left S1 nerve root, and marked hypertrophic degenerative changes projecting anteriorly from the left L5-S1 facet joint narrowing the lateral recess and left L5-S1 neural foramen. The radiologist noted that all of these conditions had worsened since the 2004 MRI.
16. In March 2008, Plaintiff received notice from Defendant that his general health insurance was being cancelled.
17. On March 31, 2008, upon Dr. MacDowell's referral, Plaintiff presented to Dr. Stephen David, an orthopedic spine surgeon at Blue Ridge Bone Joint Clinic. Plaintiff described the January 21, 2008 work injury and told Dr. David that it had exacerbated his low back pain, with radiation down his left leg. Dr. David noted that the MRIs showed that the L5-S1 disc herniation on the left had worsened. The physical exam showed decreased sensation along the left-sided L5-S1 nerve root distribution. As Dr. David testified, the radiographic findings, MRI findings, physical exam findings, and Plaintiff's complaints all correlated "quite nicely."
18. Dr. David opined that the January 21, 2008 injury caused an exacerbation of his underlying spondylosis and potentially worsened his disc herniation to the left side at L5-S1.
19. Dr. David was reluctant to recommend surgery because of Plaintiff's multiple other medical problems and his large body habitus. Instead, he recommended a lumbar epidural steroid injection, and he directed Plaintiff to follow up with him after the injection.
20. On March 31, 2008, Dr. David continued Plaintiff's out-of-work status for his low back condition. *Page 6 
21. On April 14, 2008, Dr. Daniel Hankley, a physiatrist at Blue Ridge Bone Joint Clinic, performed a lumbar epidural steroid injection.
22. On July 11, 2008, Plaintiff returned to Dr. David with continued complaints of lumbosacral back pain with some radiation down his left leg. He complained of pain on a level of seven to eight out of 10 that was exacerbated by standing and walking. Dr. David continued not to recommend surgery, and he recommended pain management with consideration of further injections. Dr. David continued Plaintiff's out-of-work status for his low back condition.
23. In July 2008, Defendant terminated Plaintiff's employment because of his unavailability to work.
24. After formally accepting Plaintiff's claim on the Industrial Commission Form 60 dated August 4, 2008, Defendant sent Plaintiff for an independent medical examination with Dr. Richard Broadhurst, an occupational medicine physician who is associated with the Center for Occupational Rehabilitation (COR) in Asheville.
25. On September 10, 2008, Dr. Broadhurst diagnosed Plaintiff with pre-existing lumbar degenerative disc disease and arthritis. He did not feel that Plaintiff had suffered any significant lasting increase in his low back symptoms attributable to the January 21, 2008 injury. He also diagnosed Plaintiff with somatoform pain disorder.
26. Dr. Broadhurst recommended that Plaintiff be enrolled in COR's work hardening program, with the goal of returning Plaintiff to "useful employment."
27. Dr. Terrence Fitzgerald, a psychologist at COR, agreed with Dr. Broadhurst's diagnoses and recommendation.
28. Plaintiff briefly enrolled in COR's work hardening program but was discharged for non-compliance after he missed several appointments. Plaintiff has coronary artery disease *Page 7 
and a family history of heart disease, and he and his wife were concerned about his fitness to continue with the rigorous physical activities required in the work hardening program.
29. Defendant sent Plaintiff back to Dr. Hankley for an evaluation on May 12, 2009. Plaintiff continued to report low back pain and left anterior thigh pain. Plaintiff reported to Dr. Hankley that he felt the January 21, 2008 injury had aggravated his low back condition but that he was "almost back to baseline at this point." Dr. Hankley did a physical examination and reviewed the MRI reports and records from Dr. MacDowell, Dr. Broadhurst, and Dr. Fitzgerald.
30. Based on Plaintiff's history, his examination, and his record review, Dr. Hankley wrote on May 12, 2009, that Plaintiff had had a lumbar strain on January 21, 2008, but that he could now resume normal activities. He wrote that Plaintiff had no work restrictions related to the January 21, 2008 injury and had reached maximum medical improvement. He assigned a one percent permanent partial impairment (PPI) rating to Plaintiff's back.
31. On June 8, 2009, Defendant filed an Industrial Commission Form 24, Application to Terminate or Suspend Payment ofCompensation. On July 8, 2009, Special Deputy Commissioner Boyer filed an Order approving the Form 24 and allowing Defendant to terminate payment of temporary total disability (TTD) compensation to Plaintiff as of June 8, 2009. The Form 24 approval was essentially based on Dr. Hankley's May 12, 2009 evaluation.
32. On July 31, 2009, Dr. Stephen R. Shaffer assigned a six percent PPI rating for Plaintiff's back.
33. Charlie Edwards, a vocational expert, performed a vocational assessment for Plaintiff. Based on Plaintiff's age, work experience, education, and medical condition, Mr. Edwards did not believe that he would be able to find a job that Plaintiff could perform.
34. Jack Dainty, a vocational consultant, performed a vocational assessment on Plaintiff for Defendant. Mr. Dainty concluded that, based on Dr. Hankley's May 12, 2009 *Page 8 
evaluation, Plaintiff could return to work in his former job with Defendant. However, based on the limitations that Plaintiff ascribed to himself during their meeting, Mr. Dainty would categorize Plaintiff as being at the sedentary or very light physical demand level.
35. Mr. Dainty agreed that if Dr. David's July 11, 2008 evaluation was utilized, then he could not say that Plaintiff could work.
36. Mr. Dainty did not research specific jobs that Plaintiff could perform. He stated that if he were to conduct vocational rehabilitation with Plaintiff, he would recommend that Plaintiff obtain his GED, then look for employment. Mr. Dainty felt that, at his current educational level, Plaintiff was only employable in a manual labor type position.
37. As of the hearing before the Deputy Commissioner, Plaintiff was still out of work and was collecting Social Security disability benefits. He still had back pain and burning pain in his legs, and he was taking pain medications prescribed by Dr. Nathaniel T. Jablecki, Plaintiff's current primary care provider.
38. The Full Commission gives greater weight to the medical opinions of Dr. David than to those of Dr. Hankley and Dr. Broadhurst. Dr. David is a spine specialist, and the Full Commission finds he has greater expertise in low back issues than does Dr. Hankley, a physiatrist, or Dr. Broadhurst, an occupational medicine physician.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his back on January 21, 2008. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff has shown that he remains totally disabled, in that he is physically unable to work in any employment consistent with Dr. David's order. N.C. Gen. Stat. § 97-2(9); Russell,108 N.C. App. 762, 425 S.E.2d 454 (1993). .
3. The Form 24 approval in this claim should be set aside, and Plaintiff is entitled to reinstatement of TTD compensation from June 8, 2009 through the present and ongoing, with full credit to Defendant for any TTD payments that were made after June 8, 2009. N.C. Gen. Stat. §§ 97-29; 97-42.
4. Plaintiff is also entitled to have Defendant pay for any and all treatment and testing he has heretofore received for his compensable low back condition, including but not limited to that treatment with Dr. Jablecki. N.C. Gen. Stat. §§ 97-2(19); 97-25. *Page 10 
5. Defendant has failed to rebut the presumption that ongoing treatment for Plaintiff's low back condition is directly related to his admittedly compensable injury. As such, Plaintiff is also entitled to have Defendant authorize and pay for further medical treatment for his compensable back condition as is reasonably required to effect a cure, provide relief, and/or lessen Plaintiff's period of disability. Id.; Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005).
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendant shall pay to Plaintiff, in a lump sum, back TTD compensation in the amount of $335.00 per week from June 8, 2009, and ongoing with full credit to Defendant for any TTD payments that were made after June 8, 2009. Defendant shall continue to pay weekly TTD compensation to Plaintiff in the amount of $335.00 per week until Plaintiff returns to work or further Order of the Commission.
2. As Plaintiff's attorney's fee, Defendant shall deduct 25 percent of the lump sum amount due per Paragraph 1 above and pay such portion directly to Plaintiff's counsel. Defendant shall also make every fourth ongoing weekly TTD check payable directly to Plaintiff's counsel.
3. To the extent Defendant has not already done so, Defendant shall pay for the treatment and/or testing that Plaintiff has received for his compensable low back condition, including but not limited to that with Dr. Jablecki. To the extent any such treatment has been paid for by Plaintiff and/or any third-party payor, Defendant shall reimburse such payor in full. *Page 11 
4. Dr. David is hereby designated as Plaintiff's authorized treating physician, and Defendant shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he recommends for Plaintiff's compensable low back condition, including but not limited to pain management, diagnostic testing and imaging, prescriptions, physical therapy, referrals, and mileage. Plaintiff shall comply with all prescribed medical treatment.
5. Defendant shall pay the costs. As part of the costs, if Defendant has not done so already, Defendant shall pay expert witness fees to the deponents, the amounts of which were set in previous orders filed by the Deputy Commissioner.
This the 27th day of June, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1